Good morning, Your Honor. Carolyn Phillips appearing on behalf of the appellate petitioner, Miguel Garcia. This court had certified three different issues, two of which actually revolve around one circumstance, and that was the admission by a jailhouse snitch regarding whether or not Mr. Garcia had told him he had shot a child. That issue actually incorporates two, one, whether or not that admission itself violated due process, and two, whether or not there was ineffective assistance of counsel for not requesting a limiting instruction. Well, explain the context that it came up in. Wasn't it that when cross-examination was going on, well, you're just a jailhouse snitch, and this, that. The guy says, well, he told me he shot a child, so that's why I reported it. Right. It was presented in terms of motivation for the snitch to actually go to law enforcement and reveal the information that Mr. Garcia had shared with him. So did anyone know that he was going to say that before it was said? Of course. In fact, there was an unlimiting motion that had been, not an unlimiting motion, but there was a hearing between the counsel and the court regarding that particular, very particular statement, in which counsel wanted and insisted on impeaching the jailhouse snitch. And the court said, well. They had to, because the jailhouse snitch said that your client confessed to him about the murder he was charged with, right? Exactly. And. And I mean, they're kind of inherently considered a bit shady, so you have to go after, you know, they obviously, they're already in jail, and you have to go against all of those type of motivations. To try to besmirch the credibility of the witness. Right. Absolutely. And that was the intent of the defense counsel. Well, did the prosecutor, was there any other evidence in the trial that your client did in fact kill a child, or did anyone argue that he was a child killer or anything like that? No, I think it actually went beyond that. The nature of this case itself was so despicable in its facts, that we hear there's a murder of someone who was then torched in a car. It brings up in question about whether or not this particular defendant can be so callous as to participate in the acts for which he was charged. Well, except for, I guess what I'm just asking in terms of isn't the fact that the snitch, who already, you know, I think people look sort of sideways at jailhouse snitches. It's not like Mother Teresa coming in and saying that, you know, a good person, you know, that the person confessed to me and all of that. But the fact that there's no other evidence there that he did kill a child, that isn't one argument that that makes the snitch look less credible? Well, this is how I think it's countered, and this is why I think the allowance of this particular information into the jury trial without eliminating instruction was so critical. The court, when the issue came up, when that statement was made in terms of rehabilitation by the district attorney of the jailhouse snitch, and he said my motivation was, well, the reason I went to law enforcement was for personal reasons, and then the district attorney asked him, well, did it have to do with shooting a child? At which point the defense counsel raised a 352 objection, and then the court said, no, the probative value is much greater than the prejudicial value, so we're going to allow this statement to come in. But wasn't there then an instruction that Zapien's testimony had to be considered with caution and close scrutiny? Isn't that the term the judge used? Yes, and as a jailhouse snitch. So when you say there was no limiting instruction, I'm a little concerned because there was an instruction. What I mean by that is particularly how this information was going to be used. So we have an inmate snitch saying that Mr. Garcia had shot a child, and this motivated him to go to law enforcement. The judge says, admits it by saying it's more probative. However, and there is no limiting instruction at the time that that particular testimony comes in that tells the jury, look, this information is only coming in in terms of the motivation of this particular witness for going to law enforcement. There was a jury instruction given at the end of the case that indicated that a jailhouse snitch, their testimony should be viewed with caution. So how do you get through the ADPA lens? There's, you know, I guess there's different ways to characterize the evidence here, but there is a fair amount of evidence against your client. And so how do you get through the ADPA lens here? Well, this is part of what I've tried to reveal in this, in the brief, is that the evidence that was presented by the prosecution relied on basically three or four witnesses, one only that actually saw or testified that she saw Mr. Garcia shoot the victim. And that was Ms. Newman. That actually bleeds over into another of the third certified issues about whether or not Ms. Newman should have been identified as an accomplice, and the jury so instructed. The Fifth District Court of Appeals agreed that was error, but said there was no prejudice. In conclusion, at the time that the prosecution is summing up, the prosecution basically says, look, you don't have to, if you just had Ms. Newman's testimony or Mr. Hernandez's testimony, acquit. However, at the same time, the prosecution encouraged the jury to look at all the testimony together, that to look at Ms. Newman's testimony and Mr. Hernandez's testimony as supporting other witnesses' testimonies. How many cases can you cite to me where cumulative error works under the ADPA lens? Yes. Not any at this point. Okay. So what do we make of the prejudice analysis by the state courts? Basically, they said it wouldn't make any difference. None of these errors would have made a difference anyway. And when you look at the context of the case, it's a pretty bad set of circumstances. And granted, I'll grant you the argument that the shooting of the child is going to be highly inflammatory, but why do you think that particularly under the ADPA lens it would have made a difference? It's sufficient that we should reverse. Well, I think because there was no evidence that was completely, there was no physical evidence. All the evidence relied on individuals' statements to the police. People who lied to the police then changed their statements to the police. Then we had an individual who actually came to court and then retracted everything that he had told to the police. Then you have an accomplice that comes in and testifies. But there is some physical evidence in that he was shot, right? It shows that he was shot and he was burned. And he was burned. But there was no physical evidence that tied Mr. Garcia to any of those actions. Did they ever find the gun? Not that I'm aware of, no. That was never introduced. So given the fact that the court is having, or the jury is having to rely on the statements of these fairly not trustworthy witnesses, you have to look at all their testimony together. And when you have a statement by the jailhouse snitch that says Mr. Garcia is callous enough to shoot a child, I think it lays the groundwork or facilitates the jury to also reach the conclusion that Mr. Garcia is callous enough to shoot someone and burn them in a car. If I may, could I reserve the rest of the time? You certainly may, Counsel. Thank you. We'll hear from the State. Good morning. May it please the Court. Kathleen McKenna representing Warden Harrell. I believe the question that the Court presented is, is there any case under AEDPA that would require a different result than the one that was reached by the Fifth District? And I think the answer to that is clearly no, there is not. The Supreme Court and this Court have repeatedly said that even the admission of prejudicial evidence does not constitute a due process violation. When did the prosecutor first know what Mr. Zapian's reason was for testifying against Garcia? When did he first learn? Yeah. I believe, I don't know precisely when he first learned. I know that the detective interviewed Mr. Zapian, went down to the prison and interviewed him, and at some point during those interviews he learned, he discussed this with Mr. Zapian, and he learned that the reason that he came forward, or he learned about this statement that an appellant made concerning that he had shot him. So was it in a police report? I don't know that it was in a report. It was during interviews. The detective interviewed Mr. Zapian. Well, I know, but then that would say when the other side would know, because you would have to discover, obviously, it would be evidence that you would turn over to the defense. And the defense was aware of that because it did come up prior to, it wasn't a surprise at trial. The defense counsel was aware of that, and it was discussed prior to Mr. Zapian's testimony whether or not they would, whether the statement would be permitted to come in or not. Did the prosecution during the trial ever try to say that there was evidence that this defendant, Mr. Garcia, ever killed a child? No, in fact, and the state court pointed that out in its opinion. The state court noted that this testimony constituted about two pages of the entire trial. What happened was, as the court's aware, after the direct examination where Mr. Zapian revealed that the appellant had confessed the killing of Mr. Herrera, and then defense counsel attempted to impeach him by showing that he had been a snitch in the past and was trying to get some benefit, that's when the prosecution asked him about why he came forward. So, and then in argument, there was never any evidence presented that this ever really happened. In fact, there was never any evidence corroborating that appellant Garcia had ever made any statements to Zapian. It was simply his testimony. Well, you know, obviously, this could be one of these trials that someone could look at, and I think that appellant's counsel is sort of characterizing it. You have, you know, a bunch of quote, unquote, lowlifes, and that the defendant's the lowest of the lowlifes, but it's not like your witnesses were, you know, I think that the female that testified, what, she got immunity, she had prior felony convictions, she had prior inconsistent statements. But the state court did say it was error not to give the accomplice testimony on her. Yes, that's correct. It was harmless. So why was it harmless? Well, it was harmless because there was other evidence. There was Mora, another witness's testimony. Well, the testimony, in his testimony he recanted, but he had been interviewed by Detective Bird and had reported a lot of information, including the fact that he had seen the body, that Mr. Garcia had shown him the body, and that he had followed Mr. Garcia to the orchard where he burned the car so that in order to give him a ride back, pick him up and take him away from the site where he burned. So there was that evidence. There was the physical evidence. So the instruction we're talking about is that when you consider accomplice testimony, there must be corroboration ever so slight. And that is only a state requirement. That's not a federal requirement. So, again, you know, now that we're looking at this case under AEDPA, we're in a different posture so that there's no United States Supreme Court authority requiring or corroborating an instruction of that nature. But in any case, the court found that there was sufficient other evidence supporting the finding that Mr. Garcia committed this murder and that, therefore, there was no harm in not giving the accomplice instruction. It's hard to imagine a strategic reason for allowing testimony that the defendant shot a child and did so callously. I mean, I just don't get it. I mean, it's such a powerful bit of testimony to allow into a trial, and there's no . . . not only not . . . even assuming it was blurted out, which it wasn't. I mean, people knew it was coming. To not ask for a mistrial, to not ask for a limiting instruction, it's pretty hard to fathom. Well, counsel did, after the conclusion of the trial, did make a new trial motion. Right. And, again, we're looking at this through AEDPA and through Strickland. I understand. And so . . . I just don't . . . my question was strategy. I just don't . . . the California Court of Appeals said, well, he may have had a reasonable strategic reason for doing this. I'm just asking you what that could possibly be. Well, I think, as another one of the judges, Judge Callahan, pointed out, counsel was faced with a difficult predicament, as is so often the case in these sort of matters. Zapian testified that Mr. Garcia said, told him, I killed Herrera, and I burned his body. So his choices were to let that go unchallenged or to cross-examine Mr. Zapian and say, hey, aren't you a snitch? Haven't you, in the past, testified about things that you've observed in prison and received a benefit? But if you know that, the answer to the question is going to be, well, I came forward because he told me he shot a child and did so really callously. That is so much more damaging than he'd been a snitch before. I just can't possibly imagine the strategic thinking that would go into that. Well, was there any argument in the trial that, you know, this guy said that he said that, and it's ridiculous. There's no evidence that he ever shot a child. So this guy just exaggerates, you know, he's got them shooting up everyone in the world. And so he didn't shoot a child, and so he, you know, he didn't confess to that either. I'm sorry, there was no evidence saying that. Did defense counsel argue, hey, you heard no evidence that he ever shot a child. This guy's just a liar. Yes, and he also said that, you know, he's just trying to, you know, make, get a benefit. And he's, he's the only reason. But I guess did he ever, did defense counsel ever specifically said, this guy's a liar because he said, you know, he said that this guy told, you know, he told me that he shot a child. There's no evidence that he shot a child. That's just a ridiculous statement. And it, did he make that argument? Well, I don't know that he specifically said that precisely. He did point out that he's, he's a snitch, and he's, the only reason he's saying any of these things is so that he could come forward. And let me check. I do have a summary of Mr. Zapien's testimony. I don't recall that counsel made that precise argument. But on, on, on recross, he said that, Zapien said, I don't even know if any of the stuff he told me is true. So he did, during the trial, point out that there's, we don't even know if any of these things Zapien is saying is true or not. And so the jury had to consider whether or not he was just making all of these things up, both the confession and the I shot a kid statement. If the court has no further questions. No further questions. Thank you, counsel. Ms. Phillips, you have some reserve time. Just briefly, I did want to, to mention the fact that after witness Zapien testified, that Detective Burr did come back on the stand, and he testified that the witness Zapien had given him many, much more details about the circumstances surrounding the shooting of a child, which in some ways can impress a jury, well, there's a lot more information in this that we don't know. But I think the fact that this particular testimony was never requested by the defense counsel to be contained in any manner, the fact that it was brought up at all, I agree, I don't think that strategically that made any sense. But the fact that once it was brought in, that there should have been a limiting instruction made by Mr. Garcia's counsel, and that did not happen and allowed the jury then to take that information and use it however they wanted to. Well, it was argued, too. The prosecution argued it. Pardon me? It looks like the prosecution argued it in closing arguments, too. Said that he shot. That's part of the thing. But I guess at the end of the day, the real question on the snitch testimony is, did it, in the context of everything else, did it make a difference? And particularly, do we have enough in federal court to say that the state court got that wrong? Right. And I think how the U.S. Supreme Court has been looking at these cases has been kind of at arm's length. But I think there's just one principle, and that is when the evidence is so unfair that it makes the trial process suspicious or not trustworthy, then the court has to scrutinize whether or not there's been a deprivation of due process. And I know that's been, this court in its decision of Holliver-Yarborough has made that a much more difficult challenge for habeas petitioners. Thank you, counsel. Thank you. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, Callahan